IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANTHONY MURRAY,

                                                OPINION AND ORDER

          Plaintiff,

                                                   19-cv-440-bbc

    v.

JOLINDA WATERMAN, SANDY MCARDLE,
MAXIM PHYSICIAN RESOURCES,
CO II MUMM, CO II JOHNSON, LT. HULCE,
NURSE SKAIF AND CO SHEMEK,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Anthony Murray filed a civil action under 42 U.S.C. § 1983, contending that medical staff at the Wisconsin Secure Program Facility violated his rights under the Eighth Amendment by failing to provide him adequate medical care for his back pain. His complaint is before the court for screening under 28 U.S.C. § 1915A. Because I conclude that plaintiff has failed to state any claim for relief against defendants, I will dismiss this case.

      Plaintiff alleges the following facts in his amended complaint.


ALLEGATIONS OF FACT

      Plaintiff Anthony Murray is incarcerated at the Wisconsin Secure Program Facility, where many of the defendants are employed: Jolinda Waterman is a registered nurse and the health services manager; Sandy McArdle is a nurse practitioner; Nurse Skaif is a

1

registered nurse; Mumm, Johnson and Shemek are correctional officers; and Hulce is a lieutenant. Defendant Maxim Physician Resources is McArdle's employer.

On October 29, 2018, plaintiff started having severe back pain that made it difficult to sleep. He saw defendant McArdle in the health services unit the next day. She prescribed lidocaine and an extra pillow.

On December 9, 2018, plaintiff submitted a health service request stating that he had sent three requests about his back pain and his difficulty in lying down. (Plaintiff does not say when he submitted the requests, whether anyone had responded to his previous three requests or whether he saw anyone between October and December.) He received a response stating that he was scheduled to be seen. On December 26, defendant McArdle wrote him a prescription for meloxicam, a nonsteroidal anti-inflammatory drug.

On January 5, 2019, plaintiff submitted another health service request stating that he had now submitted five requests to be seen and the lidocaine cream was not working. (Plaintiff does not say when he sent the requests or whether he had received the meloxicam at this point.) On January 6, plaintiff submitted another request addressed to defendant McArdle asking for notes from his last visit and a list of all of his special needs. Health services responded that plaintiff was scheduled to be seen.

On January 13, 2019, plaintiff submitted another request to defendant McArdle, stating that he had been doing yoga exercises but that they were not relieving his pain, that his pain was getting worse and that he was having difficulty getting out of his bed. He received a response stating that he was scheduled to be seen.

2

On January 14, plaintiff submitted another health service request and was called to health services. Plaintiff reported that acetaminophen and meloxicam were not helping and that his pain was worse. He requested an extra mattress, but was told that extra mattresses were ordered in very few instances and had to be approved by defendant Waterman and the special needs committee.

On January 17, defendant McArdle called plaintiff to health services about his back. McArdle prescribed him acetaminophen, diphenhydramine for pain and insomnia and extra clothing to keep his back warm. McArdle also referred him to physical therapy. Plaintiff never received any of it.

On January 20, plaintiff was working in the food services unit when he saw defendant Waterman walking by. He approached her and told her that he had been having constant, severe back pain, that he had submitted several health service requests to see McArdle and that no one had done anything to help him. Waterman responded by stating that she did not have any medical files with her, that plaintiff should not approach health services staff in the hallways to discuss medical problems, that she was not going to discuss his medical problems with him in the hallway and that he needed to wait his turn for an appointment or he would get a conduct report.

On January 23, plaintiff had to leave work early because his back was hurting too much. Security staff called health services, and defendant Nurse Skaif arrived. She told plaintiff to use the diclofenac cream that he had for his foot on his back. McArdle had never suggested doing this.

On January 24, plaintiff saw defendant McArdle in health services. She changed his meloxicam prescription to ibuprofen and thermal bottoms for added heat production as well as diphenhydramine. McArdle gave plaintiff a TENS unit, but it did not help, and plaintiff never received the prescriptions for extra clothing or diphenhydramine. Plaintiff often had to leave work because he could not complete his assigned tasks.

Plaintiff was referred to physical therapy. The physical therapist told plaintiff that magnetic resonance imaging would be the best way to determine the cause of his pain, but because magnetic resonance imaging is expensive, the prison first tries to find therapies and medicines that might work to treat pain.

On February 7, 2019, plaintiff received a response from health services stating that he should talk to his unit manager about his need for an extra-thick or double mattress.

On February 13, 2019, plaintiff pushed the emergency call button and alerted defendant CO II Johnson that he needed to see the on-duty lieutenant because he was unable to lie down and fall asleep. Johnson told plaintiff that he had notified defendant Lieutenant Hulce and was told that no one was in the health services unit. Hulce never came, and plaintiff slept on his knees over his bed because he could not lie down. On February 18, plaintiff went to health services for a file review and saw McArdle. Plaintiff asked defendant McArdle why he was not being sent for magnetic resonance imaging, and McArdle responded, "I'm not going to spend $600 to send you out to get an MRI." McArdle prescribed ice.

On February 21, plaintiff asked defendant CO II Mumm for an ice pack that had

been prescribed by McArdle to help reduce inflammation and pain. Mumm told plaintiff to ask defendant CO Shemak, the correctional officer who would be passing out medication later. Plaintiff later asked Shemak, who responded that Mumm could do it because she was not doing anything else. Plaintiff never received ice.

On March 14, 2019, plaintiff reminded defendant C.O. II Shemak that he had asked to see health services because he was hurting badly. Shemak responded that she had forgotten and that, "We all make mistakes." Plaintiff asked her to contact her supervisor. A few minutes later, a lieutenant arrived and told plaintiff that he would try to help him obtain care from health services. Shemak gave plaintiff acetaminophen for his pain.

On March 24, 2019, plaintiff sent a health service request, asking to see defendant Waterman for sharp back pain. Plaintiff also sent defendant McArdle a health service request stating that the acetaminophen was not helping, that his right leg was hurting and that his pain was 10 out of 10. Health services responded that plaintiff should continue using yoga exercises for pain as recommended by his provider.

On March 26, 2019, defendant McArdle wrote plaintiff stating that he was scheduled for magnetic resonance imaging. On May 8, plaintiff had an magnetic resonance imaging done outside the prison. (Plaintiff does not say what the results of the imaging showed. He says that he has osteoporosis of the spine, but it is not clear when he received that diagnosis or what treatment he has received for it.) Plaintiff still suffers from extreme back pain that makes it difficult to sleep on his back, which keeps him from using his CPAP machine. He has not gotten the sleep medication that McArdle ordered.

OPINION

Plaintiff states that he that he is bringing Eighth Amendment claims against defendants for failing to provide him adequate medical care for his back pain. A prison official violates the Eighth Amendment if the official acts with "deliberate indifference" to a "substantial risk of serious harm" to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "Deliberate indifference" means that the officials are aware that the prisoner faced a substantial risk of serious harm or "'excessive risk to [the prisoner's] health or safety,'" but disregard the risk by consciously failing to take reasonable measures to prevent it. Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015) (quoting Farmer, 511 U.S. at 837); Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).

Thus, to state a claim that defendants violated the Eighth Amendment by denying him adequate medical care, plaintiff must allege facts that: (1) he had a serious medical need; (2) defendants knew that plaintiff needed medical treatment; and (3) defendants consciously failed to take reasonable measures to provide the necessary treatment. Minix v. Canarecci, 597 F.3d 824, 831 (7th Cir. 2010); Forbes, 112 F.3d at 266.

Plaintiff's allegations that he has osteoporosis of the spine that causes severe back pain suggest that he has a serious medical need. He also alleges facts suggesting that all of the individual defendants knew that he had severe back pain that required treatment. It is

6

a closer question whether plaintiff's allegations suggest that the individual defendants were deliberately indifferent to his serious medical needs.

Plaintiff alleges that defendants McArdle and Waterman violated the Eighth Amendment by failing to diagnose the reason for his back pain, failing to provide adequate pain medication and delaying the order of medical imaging of his back. However, plaintiff also alleges that defendant McArdle, his primary treating provider, responded to his complaints of back pain by prescribing an extra pillow and clothing, lidocaine, acetaminophen, diphenhydramine, meloxicam, ibuprofen, ice, a TENS unit, physical therapy and yoga. Because McArdle provided plaintiff some treatment, the relevant question under the Eighth Amendment is whether plaintiff's allegations suggest that McArdle's actions were "blatantly inappropriate," Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014), or "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996). With respect to McArdle, plaintiff's allegations do not meet this standard.

Plaintiff's allegations show that McArdle evaluated him, provided treatment suggestions, prescribed multiple medications and eventually referred him for medical imaging. Although plaintiff alleges that some of the medications and treatment McArdle ordered were not delivered to him, he does not allege that McArdle was responsible for the delays. In addition, his argument that McArdle should have ordered medical imaging sooner simply shows that plaintiff disagreed with McArdle's medical assessment, not that McArdle

was deliberately indifferent. "[T]he question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." Jackson v. Kotter, 541 F.3d 688, 698 (7th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 107 (1976)). "A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." Estelle, 429 U.S. at 107. And "[a] medical professional's treatment decisions will be accorded deference unless 'no minimally competent professional would have so responded under those circumstances.'" Jackson, 541 F.3d at 698 (quoting Sain v. Wood, 512 F.3d 886, 895 (7th Cir. 2008)). Under these standards, plaintiff has failed to state an Eighth Amendment claim against McArdle. Plaintiff also has failed to state any claim for relief against defendant Maxim Physician Resources, McArdle's employer, as plaintiff's complaint includes no allegations against Maxim besides the fact that it employed McArdle.

Plaintiff's allegations also do not state an Eighth Amendment claim against defendant Waterman. He alleges that Waterman refused to speak to him about his medical problems in the hallway, but Waterman's response that plaintiff should follow proper channels to obtain medical care seems appropriate, not deliberately indifferent. Plaintiff also alleges that he wrote health service requests asking to see Waterman about his pain, but he does not allege that Waterman, in her role as health services manager, was responsible for seeing patients, reviewing health service requests or treating plaintiff in particular. Waterman cannot be held responsible if other health services staff failed to respond to plaintiff's requests for treatment. Burks v. Raemisch, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Liability

8

depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."). Accordingly, plaintiff cannot proceed on any claim against Waterman.

Next, plaintiff alleges that defendants Hulce and Johnson violated the Eighth Amendment by failing to insure that plaintiff received emergency medical relief from either health services or a hospital on February 13, 2019. Plaintiff alleges that he told Johnson on February 13 that he needed to see the on-duty lieutenant because he was unable to lie down and fall asleep. These allegations do not suggest that Johnson would have known that plaintiff needed emergency medical care. In any event, plaintiff does not allege that Johnson disregarded plaintiff's request for assistance. Instead, plaintiff further alleges that Johnson notified his supervisor, Hulce, but that Hulce and Johnson were told that no one was available in health services. Although plaintiff argues that Johnson or Hulce should have ordered that plaintiff be sent to the hospital or done more to insure that he receive care, plaintiff's allegations do not suggest that either defendant knowingly disregarded "excessive risk to [plaintiff's] health or safety." Gevas, 798 F.3d at 480.

As for defendants Shemak and Mumm, plaintiff alleges that they both failed to take reasonable measures to obtain ice for plaintiff on February 21, 2019. Plaintiff alleges that he asked both defendants to give him ice, but that both told him to ask the other. As a result, plaintiff never received the ice that had been ordered by defendant McArdle. Although Shemak's and Mumm's alleged conduct was unprofessional, negligent or even grossly negligent, plaintiff's allegations are not sufficient to state a claim that they were

9

deliberately indifferent to his serious medical needs. Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987) (unprofessional conduct, by itself, does not violate Constitution). He alleges only that the defendants expected someone else to help plaintiff, not that the defendants consciously disregarded an "excessive risk to [plaintiff's] health or safety." Gevas, 798 F.3d at 480.

Finally, plaintiff alleges that on January 23, 2019, defendant Nurse Skaif directed him to use the diclofenac cream that he had for his foot on his back, even though McArdle had never suggested that he do that. These allegations suggest that Skaif, who presumably could not prescribe new medication in her position as a nurse, was attempting to provide treatment options to plaintiff. They do not suggest that Skaif was acting with deliberate indifference to plaintiff's medical needs.

ORDER

IT IS ORDERED that this case is DISMISSED for plaintiff Anthony Murray's failure to state a claim upon which relief may be granted. A strike shall be recorded in accordance with 28 U.S.C. § 1915(g). The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 9th day of September, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge